(676 P.2d 141)
No. 54,965

STATE OF KANSAS, *Appellee,* v. MITCHELL HARTFIELD, *Appellant.*

Opinion filed January 12, 1984.

*Chester I. Lewis,* of Lewis & Davis, of Wichita, for appellant.

*Geary N. Gorup,* assistant district attorney; *Clark V. Owens,* district attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before REES, P.J., MEYER, J., and RICHARD W. WAHL, district judge assigned.

MEYER, J.: Appellant Mitchell Hartfield (defendant) was found guilty in a trial by jury of criminal theft—K.S.A. 21-3701(*a*)—a class "D" felony.

On March 10, 1982, defendant and a companion were within the premises of the Target East Department Store in Wichita, Kansas. A private security officer observed both defendant and his companion placing store merchandise in their pockets.

When defendant and his companion exited the store without paying for this merchandise, they were met by a security officer who identified himself and asked both men to accompany him to the store's security office.

As the officer and his charges approached the security office at the rear of the store, defendant attempted to flee, but was physically restrained by other store employees. In the scuffle that ensued, three cameras dropped from defendant's person.

Defendant was held by store employees until the police arrived and took him into custody.

Defendant was brought to trial before a jury on August 9, 1982. The precise details of various aspects of the trial will hereinafter be discussed in greater detail. At this point, we will present only a brief synopsis of the trial procedures.

Prior to the trial, and out of the hearing of the jury, defendant requested a continuance; this request was denied. He was, however, allowed a recess to consult further with his counsel.

After the trial was reconvened some two hours later, defendant again brought the proceedings to a halt with his request to be allowed to absent himself from the proceedings. Defendant was allowed to leave, though his counsel stayed and represented him throughout the trial.

Several times throughout the trial, defendant was informed of his absolute right to be present and was assured that this right would be scrupulously honored. Defendant repeatedly refused to attend the trial; at one point, defendant even threatened the court guards with violence if they attempted to force him to attend.

Defendant was identified by prosecution witnesses as the man apprehended in the Target East store from a photograph; he was not present in the courtroom while the testimony of those witnesses was presented, and thus no face-to-face in-court confrontation occurred. The three cameras which he had hidden on his person were also introduced into evidence. These cameras were identified as property of Dayton-Hudson, Inc., d/b/a Target East Department Store, with a wholesale value of approximately $150.00.

On August 10, 1982, the jury convicted defendant of felony theft, in violation of K.S.A. 21-3701(a). On August 27, 1982, he was sentenced to a term of 6-20 years. This appeal followed.

Defendant raises three issues: (1) whether the trial court erred in overruling defendant's motion for a continuance; (2) whether the evidence supports the verdict; and (3) whether the trial court erred in not requiring defendant's presence at trial for the purpose of in-court identification.

The first two of these issues present little merit, and, while we gave them full consideration during our deliberations, for the purposes of this opinion we shall dispense with them rather summarily.

Defendant first complains of the trial court's refusal to allow him a continuance.

K.S.A. 22-3401 empowers the courts to grant continuances; that statute provides, in pertinent part: "Continuances may be granted to either party for good cause shown."

Kansas has long accorded its judges great latitude in ruling on a criminal defendant's motion for a continuance.

"The granting of a continuance in a criminal prosecution is largely within the discretion of the trial court and its ruling in the matter will not be disturbed unless it affirmatively appears that such discretion has been abused to the extent that a defendant's substantial rights have been prejudiced." *State v. Dickson,* 198 Kan. 219, Syl. ¶ 1, 424 P.2d 274 (1967).

And see also *State v. Holt,* 221 Kan. 696, Syl. ¶ 1, 561 P.2d 435 (1977); *State v. Miller,* 4 Kan. App. 2d 68, Syl. ¶ 1, 602 P.2d 553 (1979), *rev. denied* 227 Kan. 928 (1980).

Having carefully examined the record herein, we conclude that the trial court committed no abuse of discretion in denying defendant's request for a continuance.

Defendant's second issue challenges the sufficiency of the evidence to support the verdict.

"When the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt."

"The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained." *State v. Douglas,* 230 Kan. 744, Syl. ¶¶ 2, 3, 640 P.2d 1259 (1982).

As noted by the court in *State v. Douglas,* 230 Kan. at 745-46:

"[T]he inquiry is not whether the court *itself* believes the evidence establishes guilt beyond a reasonable doubt but rather whether the court believes *any* rational trier of fact could have found guilt beyond a reasonable doubt." (Emphasis original.)

And see also *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781, *reh. denied* 444 U.S. 890 (1979).

Defendant was convicted of theft, as defined in K.S.A. 21-3701, which states in pertinent part as follows:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
(*a*) Obtaining or exerting unauthorized control over property. . . ."

Defendant stresses that much of the evidence against him is circumstantial in nature, and that this fact seriously undermined the case against him. There is no merit to this contention.

"It is a well established rule that circumstantial evidence can be used to prove any element of a crime (*State v. Rhoten,* 174 Kan. 394, 257 P.2d 141; *State v. Dill,* 182 Kan. 174, 319 P.2d 172; *State v. Crosby,* 182 Kan. 677, 324 P.2d 197), and can sustain a conviction of even the gravest offense. (*State v. Morton,* 217 Kan. 642, 538 P.2d 675; *State v. Ritson,* 215 Kan. 742, 529 P.2d 90; *State v. Hale,* 207 Kan. 446, 485 P.2d 1338.)" *State v. Johnson,* 220 Kan. 720, 722, 556 P.2d 168 (1976).

Furthermore, the cases make it clear that, when reviewing a conviction based on circumstantial evidence, an appellate court should apply the same basic test for sufficiency of the evidence applicable to any other conviction—*i.e.*, whether there is a factual basis for a reasonable inference of guilt. See *State v. White & Stewart,* 225 Kan. 87, 99, 587 P.2d 1259 (1978); and *State v. Colbert,* 221 Kan. 203, 209-10, 557 P.2d 1235 (1976).

The question posed, then, is whether there was some evidence to support a rational finding by the jury of the coexistence of the elements of theft. After a thorough review of the record, we are satisfied that the evidence against defendant was sufficient to allow such a finding. Thus, we reject defendant's second issue.

This brings us to defendant's only remaining issue, where he contends the trial court erred in not requiring his presence at trial for the purpose of in-court identification. Defendant specifically complains in regard to his absence at the time he was identified by the witnesses through the use of a photograph.

Speaking generally, a criminal defendant has the absolute right to be present at all stages of the prosecution against him. This right is guaranteed by the Sixth Amendment to the United States Constitution, which provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The Fourteenth Amendment makes this guarantee obligatory upon the states. *Pointer v. Texas,* 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065 (1965). It has been held that the right of the accused to be present at trial is one of the most basic rights preserved by the Constitution. *Lewis v. United States,* 146 U.S. 370, 36 L.Ed. 1011, 13 S.Ct. 136 (1892).

However, a criminal defendant may not impede or prevent the continuation of his trial by simply choosing to voluntarily absent himself from the proceedings. This exception to the rule that a

defendant must be present at trial was first recognized in case law.

"We have many times held that these rights may be waived by the accused, even in felony cases, and that voluntary absence may be deemed to be such a waiver. Thus a felony trial commenced when the defendant was present could be concluded and a verdict received in his absence when it was shown that the defendant, free on bond, had fled the jurisdiction." *State v. Kelly,* 213 Kan. 237, 241, 515 P.2d 1030 (1973). *Cf. Cox v. Hand,* 185 Kan. 780, 347 P.2d 265 (1959), *cert. denied* 363 U.S. 822 (1960).

See also *State v. Chuning,* 201 Kan. 784, 786-89, 443 P.2d 248, *cert. denied* 393 U.S. 1069 (1968); *State v. Way,* 76 Kan. 928, 93 Pac. 159 (1907). For an overview, see *State v. Sandstrom,* 225 Kan. 717, 719-22, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979).

Kansas presently has a statute directly in point:

"The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law. In prosecutions for crimes not punishable by death, *the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.*" (Emphasis added.) K.S.A. 22-3405(1).

And see *State v. Mantz,* 222 Kan. 453, 462-64, 565 P.2d 612 (1977).

Furthermore, aside from being susceptible to voluntary waiver, the right to be present at one's own felony trial can also be involuntarily relinquished by the defendant's unruly conduct at the trial.

"Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen,* 397 U.S. 337, 343, 25 L.Ed.2d 353, 90 S.Ct. 1057, *reh. denied* 398 U.S. 915 (1970).

*Cf. Snyder v. Massachusetts,* 291 U.S. 97, 106, 78 L.Ed. 674, 54 S.Ct. 330 (1934).

The court in *Illinois v. Allen,* 397 U.S. at 343-44, offered trial judges three options in dealing with unruly and disruptive defendants; one of these is the removal of the defendant from the courtroom.

The *Allen* court specifically pointed out that the right, having been lost, can also be reclaimed.

"Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." 397 U.S. at 343.

Defendant argues that the instant case is distinguishable from those cited above. Those cases fall into three basic categories: (1) defendant involuntarily excluded from trial due to own misconduct (*i.e., Illinois v. Allen,* 397 U.S. 337); (2) defendant free on bond voluntarily absents himself beyond jurisdiction, where court cannot compel his further attendance at trial (*i.e., State v. Kelly,* 213 Kan. 237; *State v. Way,* 76 Kan. 928); and (3) defendant involuntarily excluded (or voluntarily absent) from aspects of trial which encompass purely legal matters before the judge, but defendant represented by counsel at such times (*i.e., State v. Mantz,* 222 Kan. 453; *State v. Sandstrom,* 225 Kan. 717). We must concede that the case at bar cannot be fit conveniently into any of these molds.

Defendant contends that in the instant case he was in custody, and thus available to be forced into court for the purpose of being identified personally, face-to-face with the witnesses. It was the trial court's duty, he argues, to disregard his purported waiver of his right to be present, and to compel his attendance, at least during the presentation of eyewitness identification evidence. The trial court's failure to do so, he asserts, denied him a fair trial, in violation of the due process clause of the Fourteenth Amendment, because the photograph used to identify defendant constituted an irreparably suggestive method of identification.

In *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972), the U.S. Supreme Court reviewed its prior decisions on the scope of due process protection against the admission of evidence deriving from suggestive identification procedures. The central message to come from this review is:

" 'that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Simmons v. United States,* 390 U.S. 377, 384 (1968)." 409 U.S. at 196-97.

The Supreme Court summarized the controlling line of cases as follows:

"Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' *Simmons v. United States,* 390 U.S., at 384. . . . It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in [*Foster v. California,* 394 U.S. 440, 442 (1969)]. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." 409 U.S. at 198.

Finally, the court made the following pronouncement:

"As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199-200.

We are also aware of *State v. Warren,* 230 Kan. 385, Syl. ¶ 2, 635 P.2d 1236 (1981), where the court enumerated the five factors expressed in *Neil v. Biggers.* Further, we are cognizant of the extreme significance juries often attach to eyewitness identifications, the inherently suspicious nature of eyewitness identifications, and the resulting importance of insuring the reliability of eyewitness identifications. However, we find nothing in the instant case which runs afoul of the views expressed in *Warren.*

One key distinction is readily apparent between *Neil v. Biggers* (and its predecessors) and the case at bar. It is this key distinction which makes the instant case distinguishable from those going before it. The federal cases all involve situations where there was a lapse of time between the crime and the defendant's apprehension. The "irreparably suggestive" identification occurred sometime in this interim; a photographic identification, a lineup or a show-up, or some combination thereof, were usually involved. Thus, memory loss naturally occurring with the passage of time, coupled with a suggestive identification procedure, could combine to create a substantial likelihood of misidentification.

In stark contrast, defendant herein was apprehended at the scene, and, except for a brief struggle which began and ended in

the store, was in the custody of store security personnel continuously until the police arrived. Thus, no lineups or show-ups were necessary to identify defendant as the perpetrator prior to his arrest. Therefore, if any impermissible suggestiveness is present here, it must be in the manner of identification used at trial. With this in mind, we shall examine this case in the light of the test and factors from *Neil v. Biggers.*

Clearly the witnesses had ample opportunity to observe defendant and to observe him well; the security officer who actually apprehended defendant estimated that he observed him for between 20 and 30 minutes. There is no reason to believe that the witnesses' attention was not focused on defendant throughout their time in his presence. Furthermore, the witnesses were very definite in their identification of defendant; none showed any degree of uncertainty that the man in the picture was the same man who was apprehended in the Target East store on the day in question.

Because there were no lineups or show-ups, and defendant was apprehended at the scene of the crime, none of the witnesses had given a prior description of defendant to now evaluate for accuracy. Finally, the time between the crime and the identification of defendant by photograph was precisely 5 months. Such a relatively short period raises no spectre of suggestiveness.

Having applied the test from *Neil v. Biggers,* and considered the factors there stated, we conclude that the identification procedure used herein was not unnecessarily suggestive, if, in fact, it was suggestive at all. We have no hesitation in proclaiming that, under all the circumstances of the case at bar, there was no substantial likelihood of misidentification. Accordingly, we find no affront to due process in the method of identification employed at defendant's trial.

Two federal circuit court cases cited by defendant, *United States v. Fitzpatrick,* 437 F.2d 19 (2nd Cir. 1970), and *United States v. Moore,* 466 F.2d 547 (3rd Cir. 1972), do not sway us from this conclusion. Those cases stand for the general proposition that the rule allowing a trial to proceed in the defendant's absence does not give the defendant a right to absent himself from the trial, especially where identification is the focal issue in the trial. Be that as it may, these cases are not controlling herein.

In the case at bar, defendant's identification was not fraught with the same degree of uncertainty and unreliability as in the federal cases. Moreover, the procedure used to identify was reasonably reliable under the particular circumstances of this case.

Having concluded that the method of identification used herein passes constitutional muster, we next turn to the question whether the identification evidence was substantively sufficient to support the jury's finding of identification. In our opinion, it clearly was.

It is not alleged that the picture used for identification purposes (State's exhibit No. 1) was not that of defendant. One of the witnesses who identified the picture stated also that he had seen the man so pictured and identified approximately 15 minutes prior to giving testimony; when asked where he saw such person, he replied that it was in an adjoining waiting room. The record reflects that defendant was the person in that waiting room. Thus there was substantial evidence to support a finding of identification—i.e., that the man in the picture, the man apprehended in the Target East store, and defendant were one and the same person.

Aside from the fact that he has demonstrated no prejudice from the method of identification used at his trial, defendant's cause must also fail on other grounds. First, there is the contemporaneous objection rule:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404.

And see *State v. Freeman,* 195 Kan. 561, Syl. ¶ 1, 408 P.2d 612, *cert. denied* 384 U.S. 1025 (1965); *State v. Patchett,* 229 Kan. 163, Syl. ¶ 6, 621 P.2d 1011 (1981).

Defendant's counsel did not object to the method of identification used. On the contrary, defense counsel had this to say:

"Oh, well, Your Honor, I am not going to raise the point or argue that there's been no proper identification. I feel this, that if Mr. Hartfield has elected not to be here, then he has waived his right to—for a person-to-person physical identification; and I have no intention, Your Honor, of objecting or raising the point of identification."

Having not raised the evidentiary point at trial, defendant is precluded from asserting it before this court.

Another doctrine inimical to defendant's cause is the invited error rule:

"One who by his own acts invites error is in no position to complain or take advantage of it on appeal. (*State v. Cantrell,* 201 Kan. 182, 440 P.2d 580, *cert. denied,* 393 U.S. 944, 21 L.Ed.2d 282, 89 S.Ct. 315.)" *State v. Henderson,* 205 Kan. 231, 238, 468 P.2d 136 (1970).

There can be no dispute that in the case at bar, defendant's absence was entirely voluntary. Defendant was informed on several occasions that he could attend the trial, and that all he had to do was to make his desires known to the court guards. He never made such a request; in fact, he at one point became combative, when he thought he was going to be forced into court. It is thus clear that defendant refused every opportunity to be present at the trial and to participate in his own defense.

As for whether the trial court should have compelled defendant's presence, at least for the purpose of an in-court, face-to-face identification, the following statement by the court demonstrates that this option was considered:

"Well, what I'm thinking about is sending down for about a half dozen court guards and bring Mr. Hartfield back into the courtroom and have him sit here while this officer makes the identification."

Defense counsel replied as follows to this suggestion:

"Your Honor, I would say it would be prejudicial to the defendant to require him to be here because in his frame of mind and because of his attitude and his actions and his conduct, that he would certainly make a terrible impression on the jury, which would be prejudicial to him; and he apparently doesn't realize that and is not aware of the important factors in this trial and in this case; and so, Your Honor, I don't know what else the Court can do. I'm very strongly opposed to bringing him in the courtroom if he doesn't want to be here."

The trial court essentially agreed with counsel concerning the conduct to be expected if defendant were forced into court and the prejudicial effect such conduct would have on the jury. After further discussion, the court determined that the best course of action was simply to continue with the method of identification already being used. Thus, even if there were error here, it was precipitated by defendant's own acts and cannot be complained of on appeal.

In conclusion, the trial judge did not commit error as to the manner of conducting this difficult identification problem. Indeed, he is to be commended for his fair and concerned attitude.

Yet, even if error had occurred, defendant has failed to show any due process violation under the circumstances of this case, for, in the final analysis, the method used to identify him did not carry with it any substantial likelihood of misidentification due to irreparable suggestiveness. Furthermore, defendant did not lodge a timely objection to the method used. And finally, defendant's own acts brought on any error which may have been committed; thus, any error was clearly invited.

Affirmed.