NOT DESIGNATED FOR PUBLICATION

No. 125,570

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

DAJUAN WILKERSON,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Submitted without oral argument. Opinion filed July 5, 2024. Affirmed in part and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, deputy district attorney, *Thomas R. Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., MALONE and WARNER, JJ.

PER CURIAM: Dajuan Wilkerson appeals his convictions of two counts of battery of a law enforcement officer and one count of trafficking contraband in a correctional facility. Wilkerson claims the district court abused its discretion when it refused to address his pretrial request for a new attorney. He also claims the district court erred in finding that he knowingly and voluntarily waived his right to be present at his jury trial. After thoroughly reviewing the record, we find no error in the jury trial waiver. But the district court made no inquiry into Wilkerson's dissatisfaction with his counsel and request for a new attorney, which amounts to an abuse of discretion under Kansas law.

1

As a result, we must remand for the district court to hold a hearing and make appropriate inquiries to determine whether Wilkerson can show a conflict of interest or justifiable dissatisfaction with his attorney to justify the appointment of new counsel.

FACTUAL AND PROCEDURAL BACKGROUND

On July 5, 2019, Wilkerson, an inmate at the Hutchinson Correctional Facility, attacked correctional officers with a handmade stabbing device after the officers found an unauthorized cellphone in Wilkerson's possession. The State later charged Wilkerson with one count of aggravated battery against Gage Sears or, in the alternative, with battery of a law enforcement officer involving Sears; one count of battery of a law enforcement officer involving James Smith; and one count of trafficking contraband in a correctional facility. The district court appointed Charles Osburn to represent Wilkerson.

The case was continued many times because of the COVID-19 pandemic. The district court held a preliminary hearing on April 25, 2022, and Wilkerson appeared in person and with Osburn. Sears and Smith both testified at the hearing. After hearing the evidence, the district court bound Wilkerson over on the charges and proceeded with an immediate arraignment. The district court explained each charge to Wilkerson and covered the possible sentences. Wilkerson stated that he understood the charges and that he had a chance to discuss the charges with Osburn. The district court entered a not guilty plea for Wilkerson and transferred the case to a different division for a jury trial.

On May 23, 2022, the district court held a pretrial hearing and Wilkerson appeared in person and with Osburn. Osburn sought a continuance of the jury trial that was scheduled to start the next day. He also stated that Wilkerson might want to waive his right to appear at his trial. After raising those issues, the following exchange occurred:

2

"MR. OSBURN: Mr. Wilkerson, do you want to be here for the jury trial?

"A. No. I have no idea what's going on right now.

"THE COURT: Okay. Right now as of—

"A. I got no notification that I even had court. I didn't know nothing about this court hearing or any other court hearing.

"THE COURT: Let me tell you then. I'm going to grant your attorney's request to continue your case till July 5 unless you object to that. Do you object to that?

"A. I'm so confused. Your Honor, my jury trial for tommorrow [*sic*]—

"THE COURT: Tommorrow [*sic*]?

"A. And I ain't never even spoke to my attorney.

"THE COURT: Do you want to have your trial tommorrow [*sic*]? We'll have it tomorrow [*sic*].

"A. I need another attorney. I'm firing my attorney.

"THE COURT: Okay. You have any objection to continuing the case?

"A. I'm firing my attorney.

"THE COURT: Do you have any, answer the question and I'll determine whether you've answered it or not. If you don't answer I'll take the answer as affirmative. Tell me any objection you have to continue your case to the 5th of July.

"A. I don't have no objection.

"THE COURT: Okay; continued to the 5th of July.

"A. But did you hear what I said?

"THE COURT: I heard what you said. We've been through that before. We're adjourned.

"A. What do you mean before?

"MR. OSBURN: Your Honor, I don't believe we have taken up a motion for new counsel before on Mr. Wilkerson.

"THE COURT: Okay. Mr. Wilkerson, you have an absolute right to be present at every important stage of your criminal case which includes the trial. Mr. Osburn has told me that you do not wish to be present during your trial. Is that true?

"A. Yes, that is true.

3

"THE COURT: If you're not present then there may be things going on during the trial that you [cannot] consult with your attorney about or help him, you understand that?

"A. (Witness is indicating yes).

"THE COURT: You're nodding your head yes and you're giving up the right to do all that?

"A. Yeah.

"THE COURT: Okay. We'll accept your waiver of your presence.

"A. What does that have to do with a new attorney, though?

"THE COURT: What?

"A. What does that have to do with a new attorney?

"THE COURT: I'm not taking up your motion for a new attorney. We've already heard that motion before.

"A. What are you talking about? I think you got me confused, Judge.

"THE COURT: Now we're adjourned."

It appears that the district court held a pretrial conference on July 1, 2022, but there is no transcript of that hearing in the record. The district court held a jury trial on July 5, 2022. Wilkerson did not appear at trial but was represented by Osburn. Sears, Smith, and other Kansas Department of Corrections employees testified. The State also presented a photograph the 7-inch shiv Wilkerson used to attack the correctional officers and photographs of the wounds sustained by Sears and Smith. Finally, the State presented video footage from security cameras showing Wilkerson's unprovoked attack on the correctional officers from three different camera angles. The jury acquitted Wilkerson of the aggravated battery charge but found him guilty of all other charges.

Osburn moved for a new trial and for judgment of acquittal. He also moved for a sentencing departure. The district court held a sentencing hearing on August 19, 2022, and Wilkerson appeared by Zoom. The district court denied the posttrial motions and imposed a controlling presumptive sentence of 130 months' imprisonment, consecutive to Wilkerson's prior sentences. Wilkerson timely appealed the district court's judgment.

On appeal, Wilkerson first claims the district court abused its discretion when it refused to address his pretrial request for a new attorney. He next claims the district court erred in finding that he knowingly and voluntarily waived his right to be present at his jury trial. We will address these issues in reverse order.

DID THE DISTRICT COURT ERR IN FINDING THAT WILKERSON KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHT TO BE PRESENT AT HIS JURY TRIAL?

Wilkerson claims the district court erred in finding that he knowingly and voluntarily waived his right to be present at his jury trial. The State contends the district court properly advised Wilkerson of his right to be present and that any error was harmless because the evidence was overwhelming against him.

"A criminal defendant's right to be present at every critical stage of the proceedings is guaranteed by both the United States Constitution and Kansas statute." *State v. McDaniel*, 306 Kan. 595, 600, 395 P.3d 429 (2017); K.S.A. 22-3405(a). "The constitutional right 'emanates from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments.'" 306 Kan. at 600 (quoting *State v. Davis*, 284 Kan. 728, 731, 163 P.3d 1224 [2007]). "Like other constitutional rights of the criminal defendant, given its importance, the right to be present at one's own trial can only be waived if the record demonstrates that the waiver was knowing and voluntary." *State v. Rucker*, 49 Kan. App. 2d 414, 416, 310 P.3d 422 (2013). Whether a defendant's right to be present at all critical stages of the criminal proceedings was violated is a question of law subject to unlimited appellate review. *State v. Herbel*, 296 Kan. 1101, 1106, 299 P.3d 292 (2013).

Wilkerson argues that the district court failed to inform him that he could change his mind about the waiver and that he would not be present to testify, contribute to his defense and voir dire, and advise his counsel about potential witnesses. Wilkerson cites

5

*State v. Salton*, 238 Kan. 835, 837, 715 P.2d 412 (1986), a case where the defendant in custody simply refused to enter the courtroom for his trial. The district court advised the defendant that he could change his mind about his waiver and set up accommodations for him to hear the trial outside the courtroom. Wilkerson argues that the district court in his case failed to do the same. Wilkerson also cites *State v. Maier*, No. 120,625, 2020 WL 4250584, at *5-6 (Kan. App. 2020) (unpublished opinion), where this court found that the defendant waived his right to be present because of his belligerent conduct. Wilkerson argues that he was not belligerent and therefore did not waive his right in the same way.

But these cases do not show that the district court inadequately advised Wilkerson of his right to be present. The parties do not allege that Wilkerson was belligerent, so there was no need for a finding of waiver based on conduct. *Maier* has no bearing here. Although the district court did not advise Wilkerson of the right to change his mind, nothing in *Salton* suggests the failure to do so is always error. And while the district court did not walk Wilkerson through each way he might assist his defense if present, the district court did advise him that he had an absolute right to be present at his trial and "[i]f you're not present then there may be things going on during the trial that you [cannot] consult with your attorney about or help him."

The record reflects that Wilkerson is a seasoned criminal defendant with prior convictions including first-degree murder, attempted first-degree murder, and attempted second-degree murder. The district court personally addressed Wilkerson and informed him that he had a right to be present at every important stage of his case including the trial. The district court explained that by not being present at the trial, Wilkerson would not have the chance to consult with his attorney and try to help him with issues that came up at trial. Wilkerson stated that he understood his rights and expressed no hesitancy in waiving his right to be present at trial. It would have been better had the district court told Wilkerson he could change his mind, but this fact alone does not make the waiver

6

inadequate. We find that Wilkerson adequately waived his right to be present at his jury trial, and the record reflects the waiver was knowingly and voluntarily made.

Wilkerson also argues that nothing in the record shows that he waived his right to appear at the July 1, 2022 pretrial conference. The district court told Wilkerson that he had the absolute right to be present at every important stage of his case including the trial, but Wilkerson is correct that the court did not mention the pretrial conference. The certified case summary reflects that the court held a pretrial conference on July 1, 2022, but a transcript of that hearing is not in the record. A critical stage of the proceedings for the purposes of the right to be present encompasses "'any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue.'" *McDaniel*, 306 Kan. at 601. Wilkerson must show that he had a right to be present at the pretrial conference before the State has a burden to show that any error was harmless. Without providing a transcript of the pretrial hearing to show whether Wilkerson's presence was essential to a fair and just determination of a substantial issue, he does not show that he had a right to be present at the hearing. See *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021) (holding that party alleging an error occurred has the burden of designating a record that establishes the claimed error).

Finally, even if Wilkerson did not adequately waive his right to be present at either the pretrial conference or the jury trial, such a violation is not structural error. We agree with the State that any error here was harmless beyond a reasonable doubt. See *Chapman v. California*, 386 U.S. 18, 23-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (holding that party benefitting from the error must prove beyond a reasonable doubt that the error will not or did not affect the outcome of the trial in light of the entire record); *McDaniel*, 306 Kan. at 603-05 (applying constitutional harmless error standard to a violation of the defendant's right to be present at a critical stage of the proceedings). Wilkerson's vicious and unprovoked attack on the correctional officers with his 7-inch shiv was videotaped and shown to the jury. The only issue at trial was whether the wounds sustained by Sears

amounted to great bodily harm. Wilkerson prevailed on that issue—the jury found him not guilty of aggravated battery and guilty of the less serious alternative charge of battery of a law enforcement officer. Wilkerson received the best possible outcome he could have expected to receive from the jury's verdict. We have no hesitancy finding beyond a reasonable doubt that any violation of Wilkerson's right to be present at any critical stage of the proceedings did not affect the outcome of the trial in light of the entire record.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION WHEN IT REFUSED TO ADDRESS WILKERSON'S PRETRIAL REQUEST FOR A NEW ATTORNEY?

Wilkerson also claims the district court abused its discretion when it refused to address his pretrial request for a new attorney. He asserts the district court made no inquiry into his expressed dissatisfaction with his appointed counsel, mistakenly believing the issue had been addressed, which amounts to an abuse of discretion under Kansas law. The State does not refute that the district court failed to inquire. Instead, the State counters that Wilkerson never filed any "formal motions on the matter" and thus did not trigger the district court's duty to inquire about conflicts.

When a defendant articulates dissatisfaction with appointed counsel, a district court has a duty to inquire into a potential conflict. An appellate court reviews a district court's inquiry about a defendant's dissatisfaction with counsel for abuse of discretion. An appropriate inquiry requires the district court to at least allow the defendant to explain the conflict of interest, irreconcilable disagreement, or inability to communicate with counsel. *State v. Valdez*, 316 Kan. 1, 25, 512 P.3d 1125 (2022). "A district court abuses its discretion when it fails to inquire about a potential conflict made known to it." *State v. Bacon*, 309 Kan. 1235, 1238, 443 P.3d 1049 (2019).

Wilkerson cites *State v. Taylor*, 266 Kan. 967, 975, 975 P.2d 1196 (1999), to support his claim. Shortly after pleading guilty, Taylor sent a letter to the district court

expressing his desire to withdraw his guilty plea and hire new counsel. At sentencing, Taylor requested a continuance so he could hire new counsel. The district court summarily denied the request. Taylor then addressed the court and articulated that he felt pressured by his counsel to accept the plea offer. The district court, without addressing Taylor's dissatisfaction with his counsel, proceeded with sentencing. On appeal, the Kansas Supreme Court found that the district court had erred in failing to allow Taylor "an opportunity to explain his perception of the alleged conflict before denying the request for new counsel." 266 Kan. at 975. The court emphasized the issue was not whether Taylor met his burden to succeed on a motion for substitute counsel but that he was denied the opportunity to try to meet that burden. 266 Kan. at 974-75.

Our Supreme Court elaborated on a district court's duty to inquire in *State v. Brown*, 300 Kan. 565, 331 P.3d 797 (2014). Similar to the facts in *Taylor*, Brown expressed dissatisfaction with his trial counsel during the sentencing hearing. Without making any inquiry into Brown's complaints, the district court advised Brown of his ability to file an ineffective assistance of counsel claim after any appeals concluded. On appeal, our Supreme Court found that the district court abused its discretion for failing to inquire about Brown's dissatisfaction with his trial counsel. 300 Kan. at 578.

The *Brown* court began its analysis by observing that both our federal and state Constitutions guarantee the right of criminal defendants to have the effective assistance of counsel. 300 Kan. at 574-75. But criminal defendants have no right to choose which attorney will be appointed to represent them. If a defendant with appointed counsel seeks substitute counsel, the defendant must show "'justifiable dissatisfaction'" with their appointed counsel, which can be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. 300 Kan. at 575. The defendant bears the responsibility of providing "'an articulated statement of attorney dissatisfaction,'" which will trigger the

district court's duty to inquire into a potential conflict of interest. 300 Kan. at 575; see *State v. Vann*, 280 Kan. 782, 789-92, 127 P.3d 307 (2006) (applying similar analysis).

The *Brown* court clarified the remedy when the district court fails to inquire about a defendant's articulated statement of dissatisfaction with appointed counsel. Observing that the appellate court could not make factual findings that would be necessary to reverse the defendant's conviction, the court remanded the case

> "with instructions for the district court to conduct a hearing on [the defendant's] claim of attorney dissatisfaction, at which the defendant is to be represented by conflict-free counsel. At the conclusion of the hearing, the district court shall determine whether [the defendant] has established justifiable dissatisfaction with his counsel and whether that conflict adversely affected the adequacy of the attorney's representation." 300 Kan. at 578.

Applying the analysis in *Brown*, the question before us is whether Wilkerson's complaints about Osburn at the hearing on May 23, 2022, constituted an articulated statement of attorney dissatisfaction triggering the district court's duty to inquire into a potential conflict of interest. If so, then the district court abused its discretion because it denied Wilkerson's request for a new attorney solely on the mistaken ground that it had addressed the request. In other words, the district court's decision would have been based on a mistake of law for the failure to fulfill its duty to inquire, and a mistake of fact because there is no record that Wilkerson had previously moved for new counsel.

Wilkerson met his burden because his comments to the district court cannot be construed as anything other than dissatisfaction with his appointed counsel. Wilkerson expressed confusion about what was happening in his case because Osburn had not been communicating with him. He asserted that he had never even spoken with Osburn. He twice said that he wanted to fire Osburn and that he "need[ed] another attorney. I'm firing my attorney." The district court seemed focused on getting Wilkerson to agree with the

10

trial continuance and waive his appearance at trial. The district court ignored Wilkerson's request for a new attorney and insisted that the matter had been addressed before, even when Wilkerson and Osburn tried to explain that the court was mistaken.

The State offers no legal authority for its assertion that the district court had no duty to inquire because Wilkerson had not filed a formal motion for new counsel. The question is simply whether Wilkerson's complaints about Osburn constituted "'an articulated statement of attorney dissatisfaction.'" *Brown*, 300 Kan. at 575. Besides, even the district court construed Wilkerson's request as a "motion for a new attorney" when the court denied the request at the May 23, 2022 hearing. The State also points to the record to show that Wilkerson and Osburn spoke at the preliminary hearing to refute his claim that he had never spoken to his attorney. But that goes to whether Wilkerson met the burden to succeed in a motion for new counsel, not, as was the issue in *Taylor*, whether Wilkerson was deprived of the opportunity to present his claim. See 266 Kan. at 974-75. Put another way, the extent of Wilkerson's communications with this trial counsel is a fact for the district court to consider after satisfying its own duty to inquire and not for this court to address for the first time on appeal without such an inquiry below. Without an appropriate inquiry, this court lacks a complete record to review because Wilkerson was not given the opportunity to establish a record.

In sum, the district court abused its discretion when it refused to address Wilkerson's pretrial request for a new attorney. The State concedes that the appropriate remedy is to remand with directions for the district court to hold a hearing on Wilkerson's claim of attorney dissatisfaction, at which Wilkerson is to be represented by conflict-free counsel. After that hearing, the district court shall determine whether Wilkerson has established justifiable dissatisfaction with Osburn and whether that conflict adversely affected the adequacy of Osburn's representation. See *Brown*, 300 Kan. at 578. If the district court finds that Wilkerson fails to meet this test, then his convictions are upheld subject to any appeal he may take from the adverse judgment. But if the district court

11

finds that Wilkerson can establish a justifiable dissatisfaction with Osburn's representation, then Wilkerson is entitled to a new trial (and a new pretrial conference) where he can be represented by different counsel. In that case, Wilkerson's convictions shall be overturned and his sentence vacated, and the district court shall grant Wilkerson a new trial on the charges for which he was convicted.

Affirmed in part and remanded with directions.