NOT DESIGNATED FOR PUBLICATION

No. 114,133

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GERARDO SIMENTAL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed August 5, 2016. Convictions reversed, sentence vacated, and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jacob G. Fishman*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and GARDNER, JJ.

*Per Curiam*:  Gerardo Simental was convicted in a nonjury trial, based on stipulated facts, of one count of possession of cocaine, one count of possession of cocaine without a drug tax stamp, and one count of possession of marijuana. Simental raises two issues for our consideration: (1) whether the trial court erred in failing to advise Simental of his constitutional right to a jury trial and (2) whether Simental's convictions for possession of cocaine and for possession of cocaine without a drug tax stamp were multiplicitous. Finding merit in Simental's first argument, we reverse his bench trial convictions and remand to the trial court to afford Simental his constitutional right to a

jury trial, based on stipulated facts, or to allow him to bring about a valid waiver of a jury trial. In addition, finding merit in Simental's second argument, we vacate the sentence imposed for possession of cocaine, reverse the conviction for possession of cocaine, and remand for further proceedings.

In February 2012, Simental was a passenger in a vehicle that had been pulled over for a traffic stop in Kansas City, Kansas. Officers took Simental into custody after discovering a warrant for his arrest. Simental had a baggie of marijuana in his possession, which was located underneath the passenger seat where he had been seated. Simental also had approximately 3.8 grams of cocaine inside his shoe, which he admitted to possessing. Simental did not have a Kansas drug tax stamp affixed to the cocaine.

Simental entered into a diversion agreement with the State and stipulated to the facts stated earlier. The diversion agreement was executed in writing and signed by Simental, his counsel, the State, the diversion services officer, and the trial court. The agreement, in part, stated:

> "Defendant acknowledges that he/she must consult with an attorney to review the Defendant's legal rights and entitlements before signing and entering into this agreement.
>     . . . .
> "Defendant specifically waives all rights under the laws of the Constitution of Kansas and of the United States to a speedy arraignment, preliminary examination and hearings, speedy trial, and trial by jury. In doing so, Defendant waives the opportunity to cross examine witnesses or to present a defense. If Defendant has not already waived his/her statutory right for a preliminary hearing, then he/she does so at this time. Defendant waives these rights knowingly, intelligently, voluntarily, and with the advice of counsel."

Simental initialed these and all of the other provisions set forth in the diversion agreement.

2

In November 2013, the trial court held a diversion revocation hearing. Simental stipulated to violating the terms of the agreement. Based on the stipulated facts, the trial court found Simental guilty of one count of possession of cocaine, a severity level 4 person felony; one count of possession of marijuana, a class A drug misdemeanor; and one count of possession of cocaine without a drug tax stamp, a severity level 10 nonperson felony.

A sentencing hearing was conducted in February 2015. Simental, citing *State v. Hensley*, 298 Kan. 422, 313 P.3d 814 (2013), argued that the possession of cocaine conviction and the possession of cocaine without a drug tax stamp conviction were multiplicitous. The trial court rejected Simental's argument, stating: (1) that he did not enter a plea because he was found guilty at a bench trial and (2) that this was not an identical offense case similar to *Hensley*.

The trial court sentenced Simental to 11 months' imprisonment for the possession of cocaine conviction, 11 months' imprisonment for the possession of marijuana conviction, and 6 months' imprisonment for the drug tax stamp conviction. The trial court ordered those sentences to run concurrent to one another. The trial court suspended the sentence and granted probation to community corrections for a period of 18 months.

Before addressing the merits of this appeal, we must first determine if we have jurisdiction. Here, the trial court sentenced Simental on February 26, 2015; Simental filed his notice of appeal on March 13, 2015. Simental had 14 days from judgment to file a notice of appeal; his appeal was filed 15 days after his sentencing. See K.S.A. 2015 Supp. 22-3608(c); *State v. J.D.H.*, 48 Kan. App. 2d 454, 458, 294 P.3d 343, *rev. denied* 297 Kan. 1251 (2013). Judgment in a criminal case is sentencing, and the time to file a notice of appeal runs from oral pronouncement of sentence instead of from the filing of a journal entry. *State v. Ehrlich*, 286 Kan. 923, 925, 189 P.3d 491 (2008). The timely filing

of a notice of appeal ordinarily is jurisdictional. *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014).

We issued a show cause order asking the parties to address why this appeal should not be dismissed for lack of jurisdiction. In its response, the State agreed that Simental's notice of appeal was untimely. The State further noted that Simental had failed to show excusable neglect and that this appeal should be dismissed for lack of jurisdiction.

In his response, Simental provided a letter from his previous counsel. The letter stated that counsel was unaware that Simental's appeal was untimely until he received a copy of the show cause order. Counsel further stated that Simental had contacted him in advance of the filing date and directed him to file an appeal. Counsel admitted that he had miscalculated the due date—he believed the notice of appeal was due March 15, 2015, and not March 12, 2015. Counsel concluded:

> "There was no fault on the part of Mr. Simental regarding the late filing of his Notice of Appeal. I sincerely apologize for my error and hope that Mr. Simental will not be penalized due to the miscalculation of the time for appeal and that Mr. Simental will be provided the right to proceed with his appeal."

Additionally, Simental argued that this court has jurisdiction to consider his untimely notice of appeal based on the exceptions provided in *State v. Ortiz*, 230 Kan. 733, 736, 640 P.2d 1255 (1982). Specifically, he argues that the third *Ortiz* exception is applicable—he was furnished with an attorney who failed to perfect and complete his appeal. Simental further requested, if his appeal is not retained "for good cause shown," that this court should remand this matter to the trial court to determine whether any of the *Ortiz* exceptions were met.

4

Although we retained this appeal based on the initial responses of the parties to our show cause order, we did not decide the jurisdictional issue. Now we turn our attention to whether we have jurisdiction.

An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, it is the duty of an appellate court to dismiss the appeal. Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Northern Natural Gas Co. v. ONEOK Field Services Co*., 296 Kan. 906, 916, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Ordinarily, this court reviews the factual findings underlying a trial court's *Ortiz* ruling for substantial competent evidence. An appellate court exercises de novo review over the legal determination of whether those facts fit within an *Ortiz* exception. *State v.Gill*, 287 Kan. 289, 293, 196 P.3d 369 (2008). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012).

Simental raises the *Ortiz* exceptions for the first time on appeal. In *State v. Phinney*, 280 Kan. 394, 122 P.3d 356 (2005), our Supreme Court addressed whether *Ortiz* exceptions can be raised for the first on appeal. Our Supreme Court held:

> "Here, the Court of Appeals did not remand this case to the district court for an *Ortiz* determination but rather made that determination itself.
> "At least one case has held explicitly that the proper procedure for determining applicability of an *Ortiz* exception is to first raise the issue before the district court to allow a proper factual record to be created. See *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). This is consistent with cases arising in other settings, holding that absent a district court record, there is nothing for an appellate court to review; thus, if a district court was never given an opportunity to consider an issue, the case is not properly before the appellate court. See, *e.g.*, *State v. Porter, Green & Smith*, 228 Kan.

5

345, 615 P.2d 146 (1980). At times, however, such cases hold that in order to prevent denial of fundamental fairness upon which *Ortiz* is premised, a court may consider granting an *Ortiz* exception for the first time on appeal. See *Van Cleave*, 239 Kan. at 119." 280 Kan. at 402-03.

Our Supreme Court further held: "Where the record on appeal is factually and legally sufficient to support an *Ortiz* exception determination, such determination can be made by the appellate court without remanding to the district court." *Phinney*, 280 Kan. 394, Syl. ¶ 7.

Because Simental directed his counsel to file an appeal and his counsel readily admitted that he was at fault for failing to file a timely appeal, we determine that the third *Ortiz* exception applies—that Simental was furnished an attorney for the purpose of filing an appeal and that attorney failed to perfect and complete the appeal. As a result, we determine that we have jurisdiction to consider Simental's out-of-time direct appeal.

*Did the Trial Court Err When It Failed to Advise Simental on the Record about His Constitutional Right to a Jury Trial?*

On appeal, Simental argues that because the trial court failed to personally address him on the record before he waived his right to a jury trial, his convictions should be reversed. He contends that his convictions violate his United States Constitution Sixth Amendment right to a jury trial, thus his convictions must be reversed.

Simental concedes that he did not raise the issue of a jury trial waiver to the trial court. Generally, even constitutional issues asserted for the first time on appeal are not properly before this court for review. *State v. Coman*, 294 Kan. 84, 89, 273 P.3d 701 (2012). There are, however, exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, one of which is where "consideration is

6

necessary to serve the ends of justice or to prevent the denial of fundamental rights." *State v. Anderson*, 294 Kan. 450, 465, 276 P.3d 200 (2012).

Our appellate courts have previously considered a challenge to the waiver of a right to a jury trial for the first time on appeal to prevent the denial of a fundamental right. *State v. Frye*, 294 Kan. 364, 370-71, 277 P.3d 1091 (2012); *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009).

A criminal defendant's right to a jury trial is guaranteed by constitution and by statute. U.S. Const. Amend. VI; Kan. Const. Bill of Rights §§ 5, 10. "There is no more fundamental right in the United States than the right to a jury trial." *State v. Larraco*, 32 Kan. App. 2d 996, 999, 93 P.3d 725 (2004). The constitutional right is codified in K.S.A. 22-3403(1), which requires that all felony cases be tried to a jury unless the defendant and prosecuting attorney, with the consent of the court, submit the matter to a bench trial.

The right to a jury trial may be waived if it is done so voluntarily and knowingly. *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). The waiver of the right to a jury trial is to be "strictly construed to afford a defendant every possible opportunity to receive a fair and impartial trial by jury." 216 Kan. at 589. Determining whether this test has been met will depend on the particular facts and circumstances of the case, "but a waiver of the right to a jury trial will not be presumed from a silent record. [Citations omitted.]" 216 Kan. at 589. A court will not accept a jury trial waiver unless the defendant, after being advised by the court of his or her right to a jury trial, personally waives that right, either in writing or in open court. 216 Kan. at 590.

Turning our attention to the facts of this case, we note that Simental purportedly waived his right to a jury trial as a condition of his diversion agreement signed on or about August 5, 2013. According to the appearance docket there was no record made of any proceedings on August 5, 2013. As a result, there is no way that the trial court could

have reviewed Simental's right to a jury trial on the record. Moreover, there were no other references or confirmation of any waiver of Simental's right to a jury trial at any later recorded proceedings.

At the bench trial on stipulated facts on November 15, 2013, Simental stipulated to the violation of the diversion agreement, but the trial court never addressed or confirmed any jury trial waiver.

Moreover, it is the trial court's responsibility to advise a defendant of the nature and extent of that right. *Frye*, 294 Kan. at 370-71. The responsibility to inform the defendant of his jury trial right rests "squarely with the presiding judge." *Frye*, 294 Kan. at 371. The advisement of the jury trial right must come from the court itself. *Bowers*, 42 Kan. App. 2d at 741. Waiver will not be presumed from a silent record. *Larraco*, 32 Kan. App. 2d at 1001. A trial court's failure to comply with the requirement to advise a defendant of his right to a jury trial on the record requires reversal and remand. *Frye*, 294 Kan. at 374.

Here, the record fails to show that the trial court ever advised Simental, on the record, about his right to a jury trial. As a result, we reverse Simental's bench trial convictions and remand to the trial court to afford Simental his constitutional right to a trial by jury, based on stipulated facts, or to allow him to bring about a valid waiver of a jury trial.

*Were Simental's Convictions for Possession of Cocaine and for Possession of Cocaine without a Drug Tax Stamp Multiplicitous?*

On appeal, Simental contends that he was subjected to double jeopardy because his convictions of possession of cocaine and possession of cocaine without a drug tax stamp were multiplicitous. Simental, however, fails to specifically state if the convictions

8

were in violation of the Double Jeopardy Clauses of the United States Constitution or Kansas Constitution, or both. Simental, however, relies on *Hensley*, 298 Kan. at 436, which considered a similar double jeopardy argument as it pertains to Kansas lesser included crime law. Simental contends that "possession of cocaine is the lesser-included crime because all of its elements are identical to some of the elements of possession of cocaine without a drug tax stamp." He argues that this court must vacate his conviction for the lesser included crime of possession of cocaine.

To resolve this issue, we must consider the interplay between the Fifth Amendment to the United States Constitution, § 10 of the Kansas Constitution Bill of Rights, and K.S.A. 2011 Supp. 21-5109. Appellate review of double jeopardy and multiplicity challenges is unlimited. *Hensley*, 298 Kan. at 435.

"Both the United States and Kansas Constitutions prohibit a criminal defendant from being 'twice put in jeopardy,' and although the language of the two provisions is not identical, we have interpreted the Kansas and federal provisions as providing the same protection. See U.S. Const. [A]mend. V; Kan. Const. Bill of Rights, § 10; *Schoonover*, 281 Kan. at 493. In part, these clauses prohibit a court from imposing multiple punishments under different statutes for the same conduct in the same proceeding when the legislature did not intend multiple punishments. See *Schoonover*, 281 Kan. at 493 (referring to these cases as 'multiple description cases' cases and noting the Double Jeopardy Clauses also protect against second prosecution for same offense after either acquittal or conviction)." 298 Kan. at 435.

In *State v. Schoonover*, 281 Kan. 453, 493-98, 133 P.3d 48 (2006), our Supreme Court established the framework to determine whether convictions were multiplicitous and would thus subject a defendant to double jeopardy. The *Schoonover* court held: "[T]he overarching inquiry is whether the convictions are for the same offense." 281 Kan. at 496. There are two components that must be met in order for a double jeopardy violation to exist. First, the court must determine whether the convictions arose from the

9

same conduct. Second, the court considers whether by statutory definition there are two crimes or only one. 281 Kan. at 496. Under the *Schoonover* test, "if *each* statute contains an element not found in the other statute, presumably the legislature intended punishment for both crimes." (Emphasis added.) *Hensley*, 298 Kan. at 435.

In *Hensley*, our Supreme Court considered the lesser included crime provision provided in K.S.A. 21-3107(2)(b) (recodified in K.S.A. 2011 Supp. 21-5109[b][2]). 298 Kan. at 436. Our Supreme Court ruled that simple possession of marijuana in violation of K.S.A. 65-4162, a class A misdemeanor, is a lesser crime than possession of marijuana with no tax stamp in violation of K.S.A. 79-5208, a severity level 10 felony. Our Supreme Court held that both prongs of the double jeopardy test were met—"they arose from the same conduct, and by statutory definition they constituted a single crime in that they violated K.S.A. 21-3107(2)(b) . . . ." 298 Kan. at 438. Because our Supreme Court determined that all of the elements of possession of marijuana were identical to some of the elements of possession of marijuana with no tax stamp, our Supreme Court held that the conviction for possession of marijuana violated the Double Jeopardy Clause. 298 Kan. at 438.

In evaluating Simental's argument that *Hensley* controls, we first note that neither party disputes that the convictions arose from the same conduct. Next, we must determine whether all of the elements of the possession count were identical to some of the elements of the no tax stamp count.

Simental committed these offenses on February 5, 2012. At that time, K.S.A. 2011 Supp. 21-5706(a) provided: "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107, and amendments thereto, or a controlled substance analog thereof." The elements of the no tax stamp offense were: "No dealer may possess any marijuana, domestic marijuana plant or controlled substance upon which a tax is imposed pursuant

10

to K.S.A. 79-5202, and amendments thereto, unless the tax has been paid as evidenced by an official stamp or other indicia." K.S.A. 79-5204. A "dealer" means:

> "[A]ny person who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana, or more than one gram of any controlled substance, or 10 or more dosage units of any controlled substance which is not sold by weight." K.S.A. 2011 Supp. 79-5201(c).

In *Hensley*, our Supreme Court addressed the distinction between "any person" found in K.S.A. 2011 Supp. 21-5706(a), and "dealer" found in K.S.A. 79-5204. Our Supreme Court ruled:

> "Although the parties appear to agree that every element of a possession of marijuana charge is also found in a possession of marijuana with no tax stamp charge, the Court of Appeals panel decided otherwise, holding that because a 'person' is guilty of a possession of marijuana charge and a 'dealer' is guilty of possession of marijuana with no tax stamp, the possession of marijuana charge contains an element not found in the tax stamp charge. *Hensley*, 2010 WL 3211709, at *9.
>
> "In reaching this conclusion, the Court of Appeals overlooked the statutory definition of a 'dealer' as *'any person* who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana.' (Emphasis added.) K.S.A. 79-5201(c). Because a 'dealer' is necessarily a 'person,' proving either possession of marijuana or possession of marijuana with no tax stamp requires the State to prove that a 'person,' *i.e.*, the defendant, possessed marijuana." 298 Kan. at 437.

Here, the State argues that the sentencing range should be included in the analysis. The State maintains that the no stamp tax conviction is a lesser crime than possession of cocaine because the sentencing range for possession of cocaine is greater than the no tax stamp conviction. As a result, the State contends that the conviction and sentence should be affirmed; yet, the State fails to cite any support for its claim. See *State v. Tague*, 296

Kan. 993, 1001, 298 P.3d 273 (2013) (Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue.).

Based on the foregoing analysis, our Supreme Court's holding in *Hensley* can be applied to the present case. Both prongs of the double jeopardy test were met as provided in *Schoonover*. Thus, Simental's convictions for possession of cocaine and for possession of cocaine without a drug tax stamp were multiplicitous. Accordingly, we vacate Simental's sentence imposed for possession of cocaine, reverse the conviction for possession of cocaine, and remand for further proceedings.

Convictions reversed, sentence vacated, and case remanded with directions.